# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

IN RE:    **MIKE AND TAMMY RENEE PHAM,**    Case No. 20779

    Debtors.    Chapter 7

## ORDER APPROVING REAFFIRMATION AGREEMENTS AT DOCKET NUMBERS NINE THROUGH TWELVE

The debtors filed their Chapter 7 bankruptcy petition on March 2, 2006. Because they filed their petition after October 17, 2005, their case is governed by the recently-enacted Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). BAPCPA has changed the world of bankruptcy practice in many respects, and both litigants and courts are struggling with many of these changes. In the current matter, the debtors have filed an affidavit in which they ask the Court to approve four reaffirmation agreements into which they've entered with Educator's Credit Union. The Court hereby grants that approval—but, as it turns out, that approval is not necessary under the new law.

Reaffirmations Pre-BAPCPA

Congress passed BAPCPA in April 2005. Between April 2005 and October 17, 2005, attorneys and judges scrambled to learn as much of the law as they could, and to try to figure out what it meant for debtors, creditors, trustees, lawyers and judges. One of the code sections which changed dramatically with the BAPCPA amendments was the portion of 11 U.S.C. § 524 relating to reaffirmation.

1

MILWAUKEE, WISCONSIN

2006 MAY 31 PM 2: 53

FILED
BANKRUPTCY COURT
UNITED STATES

agreements—those agreements in which a debtor agrees with a creditor that, even though the debt that creditor holds is dischargeable in bankruptcy, the debtor will continue to be obligated for the debt beyond the bankruptcy.

In the pre-BAPCPA days, reaffirmation agreements were governed by 11 U.S.C. § 524(c). That section stated that, in order for a reaffirmation agreement to be effective, the following conditions had to be met:

* the agreement had to be made before the discharge was granted;

* the agreement had to contain certain disclosures to the debtor regarding rescission and the fact that the reaffirmation was not required by law;

* the agreement had to be filed with the court and, if necessary, accompanied by certain attorney declarations;

* the debtor could not have rescinded the agreement prior to discharge or within 60 days after the agreement was filed in court;

* the discharge provisions in § 524(d) had to have been complied with; and

* if the debtor *was not represented by an attorney* when the agreement was negotiated, the agreement had to be approved by the bankruptcy court as not imposing an undue hardship on the debtor and being in the best interest of the debtor.

The last provision—the requirement that the agreement receive court approval if the debtor hadn't been represented by counsel—did not apply, pursuant to § 524(c)(6)(B), to agreements to reaffirm consumer debts secured by real property.

The practical upshot of all this was that in the pre-BAPCPA world, the only time bankruptcy judges held hearings to approve reaffirmation agreements was

2

when the debtor had not had a lawyer assist in negotiating the agreement, and the debt being reaffirmed was not a consumer debt secured by real estate. In reaffirmation agreements where the debtor had been represented by a lawyer at the negotiation of the reaffirmation (which courts could figure out by looking at whether the attorney declaration had been signed), the courts did not hold hearings because court approval of those agreements was not required by the statute.

Reaffirmations Post-BAPCPA

**New § 524(m)**

*Presumption of undue hardship*

Then, on October 17, 2005, along came BAPCPA. The critical change to § 524 relevant to the current case is the addition in BAPCPA of § 524(m). This new provision requires that, for the 60 days after the reaffirmation agreement is filed with the court, it is *presumed* that the reaffirmation agreement works an undue hardship on the debtor *if*, when one subtracts the debtor's monthly expenses (Schedule J) from the debtor's monthly income (Schedule I), there is not enough money left over to pay the monthly reaffirmation payment.

So, for example, under the new subsection (m), if a debtor makes $1,000 per month in income, has expenses of $950 per month, and is agreeing to make a monthly reaffirmation payment on her car of $28, the presumption doesn't arise. The income ($1,000) minus the expenses ($950) leaves $50 each month, which is more than enough to cover the $28 monthly reaffirmation payment on the car. On

3

the other hand, if the debtor makes $1,000 per month in income, has expenses of $950 per month, and is agreeing to make a monthly reaffirmation payment of $75, the presumption does arise–the $50 per month left over after subtracting expenses from income doesn't leave enough to cover the $75 monthly reaffirmation payment.

What is supposed to happen if this presumption of undue hardship arises? Subsection (m) says that if the presumption arises, the court must review the agreement. It makes no distinction between cases where the debtor was represented by an attorney and cases where the debtor was not represented. In either case, the court must review the reaffirmation agreement.

This doesn't necessarily mean that the court needs to hold a hearing. In fact, the statute goes on to say that the debtor may rebut the presumption of undue hardship in writing if that written rebuttal "includes an explanation that identifies additional sources of funds to make the payments as agreed upon under the terms" of the reaffirmation agreement. So, for example, if the debtor in the second example above–the one who is agreeing to pay $75 per month but has only $50 per month left over–provided a written explanation that her mother had agreed to contribute $25 per month to pay the reaffirmed debt, the debtor might be able to rebut the undue hardship presumption. A court might read that written rebuttal, find it satisfactory, and approve the reaffirmation agreement without a hearing.

*Requirement that courts hold hearings*

On the other hand, if the presumption is not somehow rebutted to the court's

4

satisfaction, subsection (m) says that the court "may" disapprove the reaffirmation agreement. In that case, however, (m) says the following: "No agreement shall be disapproved without notice and a hearing to the debtor and creditor, and such hearing shall be concluded before the entry of the debtor's discharge." Thus, if the debtor does not rebut the presumption of undue hardship, and the court concludes that it cannot approve the reaffirmation agreement, then the court must provide notice to the parties and hold a hearing–again, whether or not the debtor had an attorney when negotiating the agreement.

### Debts owed to a credit union

Adding a further wrinkle, subsection (m)(2) states that the entirety of subsection (m) "does not apply to reaffirmation agreements where the creditor is a credit union, as defined in section 19(b)(1)(A)(iv) of the Federal Reserve Act." SO–if the debtor enters into a reaffirmation agreement with a credit union, no presumption of undue hardship arises–even if the debtor does not have a single dime left over to pay the reaffirmed debt at the end of the month.

### Debts secured by real property

After BAPCPA, § 524(c) remains virtually unchanged (the single change relates to the disclosures the agreement must make to the debtor). Thus, courts continue to be required to hold hearings for reaffirmation agreements made by debtors who were not represented by counsel during the agreement's negotiation. The exception to this rule applies to agreements to reaffirm debts secured by real

5

estate. Pre-BAPCPA, § 524(c)(6)(B) stated that the requirement of court approval for agreements involving unrepresented debtors *did not* apply in cases where the debt being reaffirmed was secured by real property. That language has not changed post-BAPCPA.

The question some courts–including the Eastern District of Wisconsin–have struggled with since the implementation of BAPCPA is whether new § 524(m)–requiring hearings in all cases where the undue hardship presumption arises, even those in which the debtor is represented, except in cases of debts to credit unions–somehow imposes a requirement that courts now must approve reaffirmations of debts secured by real estate involving debtors who have lawyers. The statute does not provide an explicit answer to this question.

New § 524(m) makes no mention of reaffirmation agreements involving consumer debts secured by real property. It does mention debts owed to credit unions, specifically stating that the newly-created presumption of undue hardship does not arise regarding reaffirmations of those debts. Does the fact that Congress specifically excluded reaffirmation of debts to credit unions from the new presumption-of-undue-hardship procedure, but *didn't* specifically exclude reaffirmations of debts secured by real property, mean that courts now must conduct the § 524(m) analysis on reaffirmations of debts secured by real property–and thus hold hearings for represented debtors where, before, they did not hold hearings even for unrepresented debtors?

6

There is a well-known canon of statutory construction known as *"expressio unius est exclusio alterius,"* which, loosely translated, means "the expression of one thing is the exclusion of another." This rule is sometimes referred to as the negative implication rule. As applied, the rule dictates that if Congress specifically referred to a particular thing, and not to other particular things, then the statute does not apply to the particular things Congress did not refer to. In this case, application of this canon would dictate that if Congress explicitly excluded debts to credit unions from the § 524(m) analysis–but didn't specifically exclude debts secured by real property, even though it certainly could have done–then Congress didn't mean to exclude debts secured by real property. Using this canon of statutory construction, then, one would conclude that, indeed, courts would now have to hold hearings on reaffirmation agreements for debts secured by real property–even when the debtor is represented by counsel–if the agreement fails the undue hardship analysis.

In spite of this canon of construction, however, it is this Court's view that the presumption-of-undue-hardship analysis in § 524(m) does *not* change the procedures for reaffirmation agreements on debts secured by real property–in other words, that it remains the case that those agreements are enforceable without court approval. The reason for the Court's conclusion is as follows: Section 524(c)(6)(A) says that if a debtor didn't have a lawyer to represent her during the negotiation of a reaffirmation, the court needs to make sure that the agreement doesn't work an undue hardship on the debtor and that the reaffirmation is in the debtor's best

7

interest. In other words, the court has to stand in the shoes of the non-existent lawyer and make sure that the debtor understands the effect of the agreement and isn't digging herself in deeper by signing the reaffirmation agreement.

But § 524(c)(6)(B) says, in effect, that if the debtor wants to sign a reaffirmation agreement on a consumer debt secured by real property, neither a court nor anyone else needs to worry about whether the debtor understands her rights or is digging herself in deeper. Even if the debtor doesn't have a lawyer to make sure that the agreement doesn't work an undue hardship and that it's in her best interest, the agreement is enforceable. Congress is not going to require the court to step in and make sure that the debtor isn't hurting herself.

Subsection (m) seems to be designed to protect debtors from doing just that–from hurting themselves. It says that whether or not a debtor has a lawyer to represent him in negotiating a reaffirmation agreement, we're going to assume that the agreement works an undue hardship if the debtor's monthly income minus his monthly expenses doesn't leave enough left over to pay the reaffirmed debt. But if reaffirmations of debts secured by real property were enforceable regardless of undue hardship or best interests of the debtor *before* BAPCPA–and if the language mandating that conclusion did not change with the BAPCPA amendments–then why should that fact be any different *under* BAPCPA? There is nothing in BAPCPA indicating that Congress intended to change the fact that reaffirmations of debts secured by real property are enforceable upon filing with the court–whether the

Case 06-20779-pp    Doc 22    Filed 05/31/06    Page 8 of 22

debtor had counsel or not when negotiating the agreement, and regardless of whether the reaffirmation agreement works an undue hardship on the debtor or whether it is in the best interest of the debtor. New § 524(m) would work a somewhat puzzling and illogical result if it somehow mandated that, in cases where debtors were not represented by lawyers, the court should not concern itself with whether the debtor understood her rights, whether the reaffirmation created an undue hardship or whether the reaffirmation was in the debtor's best interest, but in cases where the debtor *is* represented by a lawyer, the court must make an undue hardship determination.

The new reaffirmation form–discussed in more detail below–seems to presume the conclusion this Court has reached. The new form includes instructions to the debtor. On page 4, part A(2)(7), the instructions state the following:

> If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, *except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.*

(Emphasis added.) The instructions do not say, "No court approval is required (unless you were represented by counsel) . . . ." It simply states that no court approval is required for reaffirmations of debts secured by real property. It would have been helpful, one supposes, if–in and among all the various blanks lines to be

9

completed, boxes to be checked, and so forth on this extensive new form–the drafters had included a box for the debtor to check if the debt to be reaffirmed was secured by real property, making it easier for courts to determine quickly that no hearing is required. But be that as it may, the form seems to assume that no court approval is necessary under any circumstances for debts secured by real property–for whatever that assumption is worth.

### New Reaffirmation Forms

Practically speaking, new § 524(m) has created rather a tangle for courts to navigate in deciding whether a hearing must be held. Most of the time, debtors would much rather avoid needing a court's approval for a reaffirmation agreement to be effective–the requirement that the reaffirmation agreement be approved by a court slows up the granting of the debtor's discharge. Courts don't really want to schedule unnecessary reaffirmation hearings–they understand that debtors want discharges sooner rather than later, and don't want to expend court resources if it isn't necessary.

On the other hand, the new subsection (m) now has placed the onus on courts to determine (1) whether a debtor was represented by counsel at the negotiation of the reaffirmation agreement (if not, the court must hold a hearing–with the exception of agreements for consumer debts involving real estate); (2) whether, even in cases where the debtor had counsel, a presumption of undue hardship arises (which also entails figuring out if the reaffirmation agreement is with a credit

10

union); (3) if so, whether the presumption has been satisfactorily rebutted in writing; (4) if not, whether the court feels that the agreement should not be approved. In order to facilitate this determination, the Judicial Council has promulgated new reaffirmation forms for creditors, debtors and attorneys to complete.

### *Components of the new form*

The new reaffirmation form is entitled Form B20, Reaffirmation Agreement. Including instructions and form court order, it is a daunting ten (10) pages long. It consists of six (6) parts. Part A contains the disclosures to the debtor required by the statute. These include a summary of the amount to be reaffirmed, including fees and costs, the annual percentage rate, the repayment schedule and the legal disclosures about the importance of signing a reaffirmation agreement, the need for court approval in cases where the debtor does not have counsel, rescission rights, and frequently-asked questions.

Part B is the actual reaffirmation agreement. In this form, the debtors agree to reaffirm the debts as described in the agreement. The form requires a description of any changes to the debt that have been worked by the agreement–for example, if the creditor lowers the interest rate or the monthly payment in exchange for the debtor entering into the reaffirmation agreement, Part B should reflect this fact. The debtors and the creditor then sign the agreement in Part B.

Part C of the agreement is the certification by the debtor's attorney. This

11

part will be completed only if the debtor had a lawyer during the negotiation of the reaffirmation–and then only if the lawyer is comfortable signing the certification. Why might a lawyer feel uncomfortable signing the Part C certification? The Part C certification gives an attorney a choice of two boxes to check.

First, the attorney may check the box that says, loosely, I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under the agreement. This is the box the attorney would check, presumably, if, when he subtracted the monthly expenses from the monthly income, he found that the balance left over was enough to allow the debtor to make the reaffirmation payment.

If such is not the case–if the attorney determines that income minus expenses does not leave enough for the debtor to make the monthly reaffirmation payments, and therefore that the presumption of undue hardship arises under § 524(m), he is given the opportunity to mark the box next to the following language:

> *[If applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Conspicuous in its absence is a box for the attorney to check next to language along the following lines: "A presumption of undue hardship has been established with respect to this agreement. It is my opinion that the debtor is not able to make

the required payment, and that approval of this agreement would, in fact, constitute an undue hardship on the debtor." Attorneys who hold this opinion of the reaffirmation agreement their client wishes to sign have no box to check. As time passes, the trend that seems to be emerging is that attorneys left in that position simply do not sign the certification in Part C–thus leaving the impression that the debtor was not represented by counsel when negotiating the reaffirmation agreement.

Next is Part D. Part D is for the debtor to complete–it is entitled "Debtor's Statement in Support of Reaffirmation Agreement." Whether or not an attorney signs Part C, the debtor must complete and sign Part D. In this part, the debtor is asked to list her monthly income. Then she is asked to list "actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements." The debtor then must state how much money she has left over each month to make the required payments on the reaffirmed debt.

Once the debtor completes this mathematical exercise, she must attest to the following: "I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here." The form then provides lines on which the debtor may provide her written explanation. Part D also states that the debtor has

13

received the Reaffirmation Disclosure Statement (Part A) and a completed and signed reaffirmation agreement. Then there is a space for the debtor's signature and date.

In the alternative, there is a different signature line for debtors to use "[i]f the creditor is a Credit Union and the debtor is represented by an attorney." This paragraph says, "I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement."

Part E states immediately that it needs be completed only if the debtor is not represented by counsel. It is entitled "Motion for Court Approval of Reaffirmation Agreement." It states that the debtor affirms that he is not represented by counsel in connection with the agreement, and that he believes the agreement to be in his best interest "based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement." It also gives the debtor space to give additional reasons why the agreement should be approved. It asks the court to issue an order approving the agreement, and provides a space for the debtor's signature and date. Last but not least, there is a form court order which the debtor or his lawyer can complete and tender for the court's signature.

*Difficulties raised by the new form*

This detailed reaffirmation agreement form has rendered the reaffirmation

14

agreement process more complicated. To start with, this form should be used for any reaffirmation agreements submitted to the court in cases in which the petition was filed after October 17, 2005. Yet many lawyers–including counsel for the debtors in this case–and creditors do not use them. If the parties do not use this form, courts have a difficult time making the various determinations required by §§ 524(c) and (m). Thus, if parties don't use the new forms, they increase the likelihood that they may be asked to attend a hearing that otherwise would not be necessary.

Then there is the fact that the form has many parts. Parts A, B and D must be completed for every reaffirmation agreement. Part C needs to be completed only if the debtor is represented by a lawyer–*not*, as some creditors, petition preparers and debtors appear to believe, if the debtor is representing herself. Part E–the motion for court approval of the reaffirmation agreement–needs to be completed only if the debtor does not have a lawyer. And the proposed Order Approving Reaffirmation Agreement needs to be submitted only if court approval of the reaffirmation agreement is necessary–in other words, in all cases in which the debtor does not have a lawyer (with the exception of reaffirmations of consumer debts involving real property), and in all cases in which the presumption of undue hardship arises (even if the debtor is represented by counsel), *except* when the reaffirmation agreement involves a credit union or a debt secured by real property.

These nuances regarding which parts of the form need to be filed do not yet

15

appear to be clear to many parties. Some litigants file the reaffirmation agreement without Part D—even though Part D is required in all cases. Some litigants file the proposed court order in cases where court approval is not necessary—such as in cases where the creditor is a credit union and the debtor had a lawyer. As noted above, some debtors complete Part C—the attorney certification—if they are representing themselves, and didn't have a lawyer representing them.

Finally, there are areas where the form itself seems to contradict the statute or make presumptions about the substantive law. As discussed above, the form seems to assume that no court approval is ever required for reaffirmations of debts secured by real property. Another example is contained in the instructions to the debtor involving debts to credit unions. The instructions state at page 4, Part A(2)(6):

> <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation agreement is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

This helpful explanation begs a question—what if the creditor is a credit union but you were *not* represented by an attorney during negotiation of the reaffirmation agreement? The form does not advise the debtor about when the reaffirmation agreement becomes effective if it is with a credit union but he had no lawyer. What does the statute indicate about that circumstance? Section 524(c) requires a court

16

to approve a reaffirmation agreement when a debtor did not have counsel *if* the court concludes that the debt does not impose an undue hardship on the debtor *and* the reaffirmation agreement is in the debtor's best interest. Section 524(m)(2) says that a presumption of undue hardship does not arise in cases where the creditor is a credit union—period. Does this mean that, in cases where the reaffirmation agreement is with a credit union and the debtor is unrepresented, the reaffirmation agreement continues to require court approval to be enforceable, but the court need only determine whether the reaffirmation agreement is in the best interest of the debtor, and *not* whether the agreement would work an undue hardship?

It appears that the drafters of the new reaffirmation agreement form think court approval still is required for agreements involving credit unions and unrepresented debtors. Part D—the Debtor's Statement in Support of Reaffirmation Agreement—gives a debtor two options. Option one requires the debtor to read and complete "numbered paragraphs 1 and 2." Numbered paragraph 1 is the paragraph where the debtor must list income, expenses and the amount left over after subtracting the latter from the former. Numbered paragraph 2 is the paragraph stating that the debtor received the required disclosures (Part A) and the signed, completed reaffirmation agreement.

Option number two is available only "if the creditor is a Credit Union *and* the debtor is represented by an attorney . . . ." That is the paragraph which states that the debtor believes the reaffirmation agreement is in her best interest, that she can

17

afford to make the payments, and that she's received the Part A disclosures and a signed and completed reaffirmation agreement. If option number two–avoiding doing the undue hardship calculations–is available only to debtors who are entering into agreements with credit unions *and* are represented by counsel, then that means that debtors who are entering into agreements with credit unions and *are not* represented by counsel must take option number one–must make the undue hardship calculations, for review by a court.

As an aside–this Court agrees with what the form assumes. New subsection (m) states only that the *presumption* of undue hardship does not arise when the debt to be reaffirmed is owed a credit union. It does not change, in this Court's view, the obligation imposed on courts in § 524(c) to determine, for unrepresented debtors, whether the agreement does work an undue hardship and whether it is in the debtor's best interest. It appears to remain the case that courts must make that determination for all unrepresented debtors–including those reaffirming debts to credit unions–unless the debt is secured by real property.

<u>Summary of BAPCPA Reaffirmation Requirements</u>

Distilled down, it appears that the new reaffirmation statute requires the following:

<blockquote>

\*      If the debtor is not represented by counsel, and the reaffirmation agreement relates to a debt which *is secured by real property*–**no court approval necessary, no hearing necessary.**

</blockquote>

18

\* If the debtor is not represented by counsel, and the reaffirmation agreement relates to a debt which is *not* secured by real property–**court approval necessary, and court must hold a hearing.**

\* If the debtor has an attorney, and the income-minus-expenses calculations in Part D yield enough money left over to pay the reaffirmation payment–**no court approval necessary, no hearing necessary.**

\* If the debtor has an attorney, and the income-minus-expenses calculations in Part D *do not* yield enough money left over to pay the reaffirmation agreement, *but the debt is owed to a credit union*–**no court approval necessary, no hearing necessary.**

\* If the debtor has an attorney, and the income-minus-expenses calculations in Part D *do not* yield enough money left over to pay the reaffirmation payment, *but the debt is secured by real property*–**no court approval necessary, no hearing necessary.**

\* If the debtor has an attorney, the income-minus-expenses calculations in Part D *do not* yield enough money left over to pay the reaffirmation payment, and the debt is not owed to a credit union or secured by real property–**court approval is required, and a hearing may be necessary, depending on whether the debtor has satisfactorily rebutted the presumption of undue hardship in writing.**

<u>Analysis of the Reaffirmation Agreements in the Instant Case</u>

This admittedly windy analysis of the new reaffirmation provisions leads the Court to the facts in this matter. The debtors in this case filed four (4) reaffirmation agreements, showing up on the court docket at docket numbers 9 through 12. The first agreement reaffirms a debt to Educators Credit Union, secured by a vehicle. The second agreement reaffirms a debt to Educators Credit Union, secured by a Kwik Cash Line of Credit. The third agreement reaffirms a debt to Educators Credit Union, secured by an interest in real property. The final agreement

19

reaffirms a debt to Educators Credit Union, secured by another vehicle.

Because counsel for the debtors did not utilize the new reaffirmation forms, the Court did not immediately realize that these reaffirmation agreements related to debts owed to credit unions, or that the third agreement related to a debt secured by real property. The Court noted that there was no Part D submitted, and therefore scheduled a hearing. At the hearing, the Court asked counsel whether counsel believed that the new law required court approval of these agreements. Counsel responded by indicating his belief that the new law required hearings that shouldn't be required. The Court proceeded with the hearing, noting that when the Court subtracted the debtors' expenses from their income, it did not appear that they had sufficient funds to make the reaffirmation payments.

Counsel for the debtors responded that the debtors had had a significant decrease in some of their expenses, and that if the Court could give him time to submit an affidavit, he could clarify the situation. On April 20, 2006, counsel submitted the affidavit, indeed demonstrating that his clients' expenses were less than reflected on the schedules and demonstrating that they could afford to enter into the four reaffirmation agreements. The debtors reiterated their request that the Court approve the reaffirmation agreements. It was upon the review of the affidavit submitted by counsel that the Court realized that (1) all four agreements reaffirmed debts owed to a credit union, and (2) the third agreement reaffirmed a debt secured by real property.

As the discussion above hopefully makes clear, the Court's approval is not necessary. These agreements have been effective since the date of their filing. Had the Court realized sooner that the debts were owed to a credit union, the Court would not have scheduled the hearing or required the submission of further documentation. The Court realizes that this mistake has caused additional work for debtors' counsel, a result the Court regrets. There has not, however, been a delay in discharge for the debtors–their adjourned meeting of creditors concluded only a week ago, with the trustee concluding that more investigation is needed. Nonetheless, it is not the Court's wish to make unnecessary work for debtors or their counsel. The Court can say only that it, like other courts and bankruptcy practitioners across the country, is continuing to learn about and try to understand the changes BAPCPA has wrought.

In this instance, because the debts the debtors seek to reaffirm are owed to credit unions–and indeed, one is secured by real property–the presumption described in § 524(m) does not arise, and no court approval is necessary because the debtors were represented by counsel when the agreements were negotiated. The Court will, in order to resolve the outstanding issue for the sake of the docket and to

Case 06-20779-pp    Doc 22    Filed 05/31/06    Page 21 of 22

set the debtors' minds at rest, approve the agreements, but reiterates that the approval is not necessary and that the agreements have been enforceable since their filing.

WHEREFORE, it is hereby ORDERED that the reaffirmation agreements found at docket number 9-12 are hereby APPROVED.

SO ORDERED this 31st day of May, 2006.

_____
HON. PAMELA PEPPER
United States Bankruptcy Court

Cc:   Mike and Tammy Renee Pham
Debtors

Eugene N. Johnson
Counsel for the Debtors

Michael P. Maxwell
Chapter 7 Panel Trustee

Office of the U.S. Trustee

22